455 A.2d 641

**COMMONWEALTH of Pennsylvania**

**v.**

**Terri TAMI and Bonnie Irvine Tami, Appellants.**

Superior Court of Pennsylvania.

Argued Nov. 10, 1980.

Filed Dec. 10, 1982.

Reargument Denied Feb. 22, 1983.

Petition for Allowance of Appeal
Denied May 16, 1983.

342

Dennis C. Cogan, Allen Ellis and Robert C. Fogelnest, Philadelphia, submitted a brief on behalf of appellants.

William F. Morgan, Assistant District Attorney, Warren, for Commonwealth, appellee.

Before PRICE, CAVANAUGH and HOFFMAN, JJ.

PRICE, Judge:

The instant appeal is brought from an order of the court below, entered on April 29, 1980, denying appellants' motion to dismiss based on double jeopardy grounds. For the reasons stated herein, we affirm the order of the lower court.

The events pertinent to this appeal are as follows: The appellants, Terri Tami and Bonnie Irvine Tami, husband and wife, were convicted in a non-jury trial[1] before Wolfe, P.J. of Warren County of delivering a controlled substance in violation of the Drug, Device and Cosmetic Act of 1972.[2]

At the preliminary hearing, undercover state trooper Paul Bartko testified that in May 1976 he was introduced to the appellants by one Jack White. The next encounter between Bartko and one of the appellants was on June 22, 1976. On that date, White telephoned the Tami residence and said that Bartko would be stopping by. Bartko went to the Tami residence later that day and purchased narcotics from Bonnie Irvine Tami. He made three subsequent purchases from the appellants. Trooper Bartko was unaccompanied on each of the four occasions.

On appeal, the Superior Court reversed and granted a new trial on the grounds that the record failed to disclose that appellants' waiver of a jury trial was knowingly and intelligently made. *Commonwealth v. Tami*, 264 Pa. Superior Ct. 535, 400 A.2d 214 (1979). Prior to the commencement of the second trial the appellants jointly filed a motion to dismiss based on double jeopardy and violation of due process grounds wherein they contended that as a result of intentional prosecutorial misconduct during the proceedings

---

1. Terri Tami and Bonnie Irvine Tami were each convicted of 2 counts, and each were fined $500 plus costs and sentenced to 2–4 years imprisonment.

2. Act of April 14, 1972, P.L. 233, No. 64 § 13, amended by Acts of October 26, 1972, P.L. 1048, No. 263, § 1; December 30, 1974, P.L. 1041, No. 340, § 1. Amended subsequent to appellants' first trial by Acts of November 26, 1978, P.L. 1392, No. 328, § 2; and December 4, 1980, P.L. 1093, No. 186, § 2.

surrounding the first trial they failed to raise the defense of entrapment. Specifically, appellants argue that the Commonwealth at the preliminary hearing misled them into believing that, Jack White, the intermediary who introduced the appellants to the undercover police officer to whom they sold narcotics, was not a government informant. Therefore, appellants argue, they were foreclosed from developing an entrapment defense. We find the appellants' characterization of the facts to be unsupportable.

Appellants contend that they were misled by the testimony of the undercover state police officer, Paul Bartko, at the preliminary hearings. Specifically, appellants point to the testimony of Bartko on cross-examination. It was during Bonnie Irvine Tami's preliminary hearing that defense counsel first inquired as to the role of the intermediary, Jack White:

Q. Trooper Bartko, when and how did you first meet Bonnie Irvine?

A. I don't remember the exact date but I was taken to her by a subject named Jack White.

Q. Was he working with the State Police as a confidential informant?

At this point the assistant district attorney objected to the question, arguing that the state did not have to disclose the identity of confidential informants at preliminary hearings. The magistrate sustained the objection. The defense counsel continued his cross-examination:

Q. You were introduced to Bonnie by Jack White?

A. Yes.

. . . .

Q. Did Jack know you were a State police officer at the time?

A. I don't know. I don't believe so, but I don't know.

. . . .

Q. When did Jack White first become aware of the fact that you are a State Police Officer?

A. I don't know if he does yet. . . .

Later, at Terri Tami's preliminary hearing, defense counsel, who was representing both parties, again inquired about Jack White:

Q. ... Again, trooper, how did you meet Terry [sic] Tami, through Jack White?

A. Yes, at the same time I had met Bonnie, the same day.

....

Q. So if I can get this straight, Jack walked you in the first time, not knowing you were an undercover agent?

A. As far as I know, yes.

In response to the appellants' discovery motion prior to the second trial, the first discovery concerning Jack White, the Warren County district attorney indicated that White was cooperating with the police in the hope that the authorities would be lenient in regard to simple assault, disorderly conduct and criminal mischief charges pending against him. White was not paid for his cooperation and the charges against him were subsequently dismissed by the grand jury.

First, we fail to see how appellants were misled by the testimony of state police officer Bartko. When the assistant district attorney objected to the defense counsel question as to whether Jack White was working as an informant, it was implicit that White was in fact an informant. At the very least the objection signaled to defense counsel that White might be more than a simple dupe of the undercover state police officer. In sum, the appellants knew the identity of the person who led the undercover police officer to them and the details of White's activities vis-a-vis appellants and the police officer. We fail to see how appellants were prejudiced in their ability to prepare their case for the first trial.

■ In addition, our examination of the complete record reveals not the slightest evidence to support a defense of entrapment.

The test for entrapment is provided in 18 Pa.C.S.A. § 313(a) and (b) wherein it is stated:

(a) General Rule—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence for the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) Making knowingly false representations to induce the belief that such conduct is not prohibited; or

(2) Employing methods of persuasion or inducement which creates a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) Burden of Proof—... [A] person prosecuted for an offense shall be acquitted if he proves by a preponderance of evidence that his conduct occurred in response to an entrapment.

As we stated in *Commonwealth v. Stokes*, 264 Pa. Superior Ct. 515, 518, 400 A.2d 204, 206 (1979):

This rule calls for an objective evaluation of police conduct to determine whether there is a substantial risk that the offense will be committed by persons innocently disposed. Thus, in order that the defense of entrapment succeed, it must be shown that the police conduct would have induced an innocent person to commit a crime. (citations omitted).

Viewing the conduct of undercover police officer Bartko and informant White objectively, they did nothing more than afford appellants an opportunity to make narcotics sales. Indeed, White's only role in this matter was to introduce the police officer to the appellants as a person interested in purchasing narcotics. Moreover, on each of the occasions where a purchase was made by the police officer and for which appellants were charged and convicted, Jack White was not even present.

Accordingly, the order of the trial court denying appellants' Motion to Dismiss is affirmed.